and we thank you. And we thank Mr. Koenig, of course, as well. Thank you. All right. We're United States v. Ronald Colbert or Colbert? Colbert, Your Honor. Hello, Mr. Wilcoxson. May it please the court. My name is Cody Wilcoxson and I represent the appellant Ronald Colbert. The district court committed reversible error in finding that officers conducted a constitutional search of Mr. Colbert. The officer's decision ultimately comes down to learning that Colbert had the lawful right to carry a firearm in Indiana and then using his gun permit as a basis to conduct a search. The facts of this case make that determination a contradiction. Before the traffic stop, Mr. Colbert had applied for and received a permit to carry a concealed handgun in Indiana. I think it's important that we talk about the process that Mr. Colbert had to go through to receive that permit. First, he had to submit an application to law enforcement. Once he submitted that application, law enforcement then investigated his background to determine whether Mr. Colbert was of the character and reputation to lawfully and safely carry a handgun in the state of Indiana. That very same law enforcement agency, which determined that Mr. Colbert was of character and reputation to carry a handgun, then used that very same determination to conduct an unfettered search of Mr. Colbert. There's nothing in the statute on Mr. Colbert receiving his concealed and carry permit that indicates he presented a danger by carrying a gun. His existence of the permit cannot justify a determination that Mr. Colbert was dangerous. Of course, he also had been followed out of a stash house, and he reeked of a controlled substance. Your Honor, I'm glad— Your Honor, I'm glad you mentioned that. The first thing you mentioned was the stash house. Your Honor, there is nothing in the record that would support any knowledge by Detective Fentz or Officer Brandon that they had any knowledge of Mr. Colbert's pre-traffic stop activities. Do you think the collective knowledge doctrine does or does not apply here, given the fact that it sounds like DEA agents are observing the stash house, but the stops are being done by state police or county police? Your Honor, there's nothing in the record that would support that Detective Fentz had any collective knowledge. He had any communication with the DEA agents. His affidavit starts by saying that he was in full uniform, in a squad car, driving in the area of U.S. 36 and Ronald Reagan Parkway when he saw Mr. Colbert driving southbound on Ronald Reagan Parkway. He doesn't say anything about— That's on Gadszkowski's affidavit, which clearly states that officers maintained surveillance when Colbert left the suspected stash house, and that during the surveillance, Officer Fentz witnessed the traffic violations. Why wouldn't that be sufficient to show that Officer Fentz knew that he had just left the stash house? He was clearly part of the surveillance team, right? Well, I don't know. Just as Judge Brennan noted when a person—and Judge Ripple—both noted when a person—they both noted that, you know, you have someone driving erratically, he's behaving strangely, he's an evasively, he's coming from this—he's coming from a place where he's not supposed to be. He's in the stash house, he reeks of marijuana, he has a concealed carry license. Something is in that area that's, you know, sticking out, whatever it is. I mean, I'll agree that Officer Fentz's affidavit might not be the most articulate we've seen, but it certainly seems obvious that he thought Colbert was possibly under the influence of drugs involved in the drug trade and had access to a concealed firearm. So, I don't know. Your Honor, I think it's worth addressing the additional factors that Judge Ripple and yourself raised. So, in addition to the fact that we do not believe the district court can consider the stash house because the record does not support that Detective Fentz had that knowledge, the rest of the factors are also, when you conduct a fact-specific inquiry, fall short. You both mentioned the nervousness, that it took him too long to stop or that he was—he looked back at the vehicle, and this court has said that nervousness is of limited value and it's particularly an unreliable factor in the context of a traffic stop in Huff v. Riker because almost everyone is nervous in the context of a traffic stop. And I would note, for your honors, that Detective Fentz approached the vehicle. He puts in his affidavit that he immediately smelled marijuana, that at that time it had already taken Mr. Colbert too long, in Detective Fentz's estimation, to stop. It had already taken him too long to get out of the vehicle, and as soon as he got out of the vehicle, Detective Fentz saw the alleged bulge in his pocket. At that point, he did not elect to pat him down. Detective Fentz invited him to get into his squad car, and this court has said in Jackson that such an action, if you believe that someone was armed and potentially dangerous, would be unreasonable. And while the government will tell you that that's the officer's subjective belief, that's the only evidence we have in the record of what an objectively reasonable person would do. There's nothing to suggest that Detective Fentz isn't a qualified and very great law enforcement officer. He did not believe objectively that Mr. Colbert was armed or dangerous when he got in the car, and all of those factors had already been presented to him. You make the point about the nervousness, and that can be well taken. The question is, why was this done on affidavits? Because a number of the inferences or findings that could have been reached by the district court might have altered or might have changed if an evidentiary hearing had been requested. Do we know why, for example, your client didn't request an evidentiary hearing here? Your Honor, in this case, his appointed defense attorney at the time did not, and he did adopt these affidavits. Now, we strongly believe these affidavits do not provide a sufficient record for the district court to make its decision in providing the facts that support reasonable suspicion is the government's burden. It's not Mr. Colbert's to disprove. But if he had objected at that point, the court could have held a hearing. The court could have resolved the issue. How would that not be considered a waiver? I mean, Colbert's attorney accepted the affidavits as true. And, Your Honor, I believe the affidavits are insufficient to find reasonable suspicion or that there was a search incident to arrest conducted. So if the affidavits are insufficient, then this is the record the district court had to go on. Candidly, and outside the record, I agree with you that a suppression hearing of evidence was probably necessary in this case. And there are a lot of issues that need to be flushed out of whether, you know, when someone, what is taking too long to get out of the vehicle? To someone, 15 seconds could be too long. If it's two minutes, that's a different story. And we don't have that record. We just have Detective Fenton's subjective beliefs. And this is an objective standard. How do you deal with the Fourth Circuit's Robinson case? Your Honor, I believe twofold. First, I believe they improperly ignored the conjunction in armed and dangerous, which the Supreme Court and this court have readily acknowledged for decades that that conjunction has meaning. And that you have to do a separate inquiry. Now, whether the facts are the same is a different question, but there is a separate inquiry between armed and dangerous. And we cannot just assume in light of the new state laws in many places of lawful carry firearms, particularly in Indiana where law enforcement makes the determination of who can carry one, that that person is dangerous. But I think even setting that aside, Your Honor, in this case, the suspicion of armed and dangerous is focused on the bulge. And the officers had the opportunity to fix the bulge. And unlike all of the other bulge cases that the government has cited, the bulge here was innocuous. It was a cell phone and money. Is it your argument that once they found the bulge, they had to stop? That once the basis for the reasonable suspicion has been resolved, there's no right to a curiosity search under Terry. In each of the cases, Mims, Orman, Radford recently, the person has a bulge in their t-shirt and they ultimately lift up their t-shirt and there's a gun or narcotics. The bulge always ends the inquiry or leads to an arrest, which would allow a search incident to arrest. That's not the case here. The bulge was innocuous. There was no more reasonable basis to continue a search at that point. Except they knew that he was in possession of marijuana, which is illegal in Indiana. Your Honor, that would go towards a search incident to arrest. And here, Detective Fentz told us exactly what he thought after in a search incident to arrest requires a custodial arrest or the intent to arrest. When did the arrest take place? What was that, Your Honor? When did the arrest take place? After the... How far, how much after? After the Terry search? Yeah. That's not in the record, Your Honor. We don't know. But, Your Honor, and I see my time is up. If I can briefly respond to your question about the search incidents to arrest. It is not an uncontroversial position that a search instance to arrest requires an arrest. And here, Detective Fentz said he approaches the vehicle, smells marijuana, and then he tells us exactly what he thinks and what he's going to do. He asked Mr. Colbert to come back to his vehicle so he can write him a warning for his moving violations. They then get in the vehicle. He says he smells marijuana again. And again, he tells us exactly what he thinks and what he's going to do. He continues to write the warning. At no point in this record is there anything that suggests that Detective Fentz was ever going to arrest Mr. Colbert for marijuana or investigate Mr. Colbert for marijuana. It simply is not in the record and cannot be supported for search incident to arrest. We use an objective test, don't we? Yes, Your Honor. Thank you. Thank you. Thank you. All right. Mr. Reitz. May it please the Court. Brian Reitz for the United States. The frisk here was supported by reasonable suspicion. I want to start by addressing the hearing which Judges Brennan and Roedner mentioned. There is no need for a hearing here because Mr. Colbert, in his pleading, adopted the affidavits, so there is no factual dispute. Because of that, anything at this point that Mr. Colbert objects to or disputes in those affidavits is waived because he agreed to them below. With that, moving on to the substance of the frisk, under Pennsylvania v. MEMS, the frisk based on the bulge itself was sufficient. Has our law gone quite that far, this Court's law gone quite that far? No, perhaps not on that point. But even if more than the bulge is necessary under this Court's precedence, an easy comparison would be Radford, which is actually Mr. Colbert's co-defendant. There, the Court said that it wouldn't have been even prudent to challenge the frisk based on leaving a stash house, noncompliance, and nervousness, which are all factors that are present here, plus you have Mr. Colbert's smell of marijuana and the concealed carry, which of course gave police some reason to suspect that Mr. Colbert was armed. What are your thoughts on the whole collective knowledge and the affidavit? We do have two different sovereigns here. We've got the DEA and we have the local police. Correct. The Gostkowski's affidavit I think at least is implicitly clear that both agents and, well, by stating that agents and officers were part of the surveillance, that's pretty clear that it means federal and state. That affidavit clearly states that the officers maintained surveillance as Mr. Colbert left the residence, and as part of during this surveillance, they stopped the vehicle. So the clear inference there is that Fentz made the stop as part of the surveillance. I think right now in this argument, Mr. Colbert has called that a reasonable assumption. So if that's a reasonable assumption, the district court cannot have clearly erred by making that inference. That's a factual determination. That inference would be reviewed for clear error. And based on the affidavit, it's certainly not clearly erroneous for the court to have taken it that way, that during this investigation meant that Fentz had some knowledge. And the collective knowledge doctrine under this court's precedence doesn't require specific testimony from any officer that he or she knew every single thing about the investigation at large. So, yes, we think the collective knowledge doctrine applies. I do want to make one point on the search incident to arrest or inevitable discovery that I don't think I did a very good job in my brief pointing out. On the subjectivity of whether there would have been arrest, not arresting Mr. Colbert in this situation would have required a police officer to let someone drive away in a vehicle while having a suspicion that the person, the driver, was impaired. So the officer smelled marijuana on Mr. Colbert. No one else was in the vehicle with Mr. Colbert. Both officers smelled the marijuana even when he left the vehicle. So there is strong suspicion that Mr. Colbert would have been under the influence of marijuana. And it seems unlikely that a police officer would have allowed someone to drive away impaired. It would have endangered public safety. So that's another reason we think that regardless of the particular timing, the search incident to arrest occurred before the formal arrest. That's true. But we think there's enough in the record to believe that, objectively, an arrest would have taken place. And so the evidence would have been inevitably discovered even beyond the fact that the frisk itself was valid. If there are no further questions, we'd be happy to rest on our brief otherwise. Thanks, Mr. Wright. Thank you. Thank you, Your Honor. Okay, Mr. Wilkinson. Mr. Wilkinson asked for four minutes. Let's give it to him, please. Go ahead. Thank you, Your Honors. Counsel just addressed the search incident to arrest or the inevitable discovery and saying that they believe that the police officer was involved. They believe that Mr. Colbert was impaired and that this would inevitably be discovered because they would never let him drive away impaired. Other than the fact that they say that they smelled marijuana, there's nothing Detective Fentz says in his affidavit that says he believed that Mr. Colbert was impaired. The smell of marijuana can be on one's clothing without consuming it. There's nothing that he says that Colbert was walking strangely, talking funny, other than the general nervousness that he refers to. Detective Fentz does not establish that he believed he was impaired or that he was not going to let Mr. Colbert drive away. Counsel also discussed the, and Judge Brennan, you brought this up, of this court's jurisprudence going so far on the bulge, and we believe that it has not, and this court in Leo discussed the armed and dangerous conjunction, and that both were required and that the belief that a gun could be present does not always justify a search. In that case, it was a backpack. Your Honors, I think the issue that you have highlighted and are moving towards is the totality of the circumstances. And in this case, we must conduct a fact-specific inquiry. While we do take all of the factors in totality, we must look at the underlying basis of each of them before we accept them. In this case, the stash house. It is not in the record. It is not reasonable to infer that Detective Fentz knew. He does not provide that in his affidavit, and using the turn of phrase of that as part of the surveillance that he was followed does not say that Detective Fentz was part of that and part of that surveillance. That is an assumption too far, and as I mentioned, he said he was in full uniform in a marked squad car. It is hard to infer that he would be sitting outside of a stash house. In addition, the nervousness is of little probative value. The bulge, even if you accept armed and dangerousness that you could frisk the bulge, the scope of that search needs to be limited. There is nothing in the jurisprudence that says if you see a bulge in the front pocket, you get to search the back pocket or the shirt or your shoes. A bulge is the reasonable suspicion, and the search must be limited to that. Finally, taking all of these facts, it does not support that Mr. Colbert was armed or dangerous at this time, and we believe this court should reverse the district court's decision. If there are no further questions, thank you. Mr. Wilcoxon, you were appointed by the court, and you have our deep thanks for taking on the case and doing such a nice job for your client. Thank you. Thank you, Your Honor. And thank you, Mr. Reitz. You always do a nice job for your client. Okay.